#28255, #28266-a-DG
**2018 S.D. 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TAMMY LAGLER,                                    Claimant and Appellee,

        v.

MENARD, INCORPORATED
and ZURICH AMERICAN
INSURANCE CO.,                                   Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

SCOTT N. HEIDEPRIEM
KASEY L. OLIVIER of
Heidepriem, Purtell & Siegel LLP
Sioux Falls, South Dakota                        Attorneys for claimant and
                                                 appellee.


J.G. SHULTZ of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota                        Attorneys for defendants and
                                                 appellants.


* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2018
OPINION FILED **07/03/18**

#28255, #28266

GILBERTSON, Chief Justice

[¶1.]        Tammy Lagler suffered a workplace injury while employed by Menard Inc.  The South Dakota Department of Labor and Regulation awarded Lagler lump-sum, permanent-total-disability compensation but denied her request for attorney's fees.  On appeal, the circuit court affirmed the Department's decision to award compensation but reversed the decision to award it as a lump sum.  The court also reversed the Department's denial of attorney's fees.  The parties each appeal various aspects of the court's decision.  We affirm.

**Facts and Procedural History**

[¶2.]        On April 21, 2007, then-47-year-old Lagler injured her right ankle while working in the garden center of the Sioux Falls Menards.[1]  While stepping off a raised platform, Lagler lost her balance and landed on her right foot.  She heard a "pop" and felt a sharp pain on the inside of her right heel that extended up the back of her leg to the inside of her knee.  Lagler also suffered minor injuries to her knee and elbow.  Her ankle immediately swelled and was painful.  Hours later, Lagler sought medical care.  A physician's assistant (P.A.), Rodney Ridenour, examined Lagler's ankle and after ordering imaging, determined that the ankle was sprained and not fractured.  Several days later, Lagler was examined by Dr. Ronald Rossing, who also diagnosed Lagler's injury as a sprain.  Dr. Rossing fit Lagler with a cast shoe and advised several work restrictions: wear the cast shoe, limit stair climbing, no lifting over 25 pounds, and no walking for longer than 45 minutes at a time.

---

1.      This opinion uses the name *Menard* to refer to the corporate entity Menard Inc., which is a party in this appeal.  The name *Menards* is used to refer to the individual store where Lagler was employed.

-1-

[¶3.] Lagler continued to work at Menards. For its part, Menards accommodated Lagler's work restrictions. But Lagler continued to experience pain, and on June 6, 2007, she consulted Dr. William Bell, a board-certified orthopedic surgeon. Dr. Bell fit Lagler with a controlled-ankle-motion (CAM) boot and requested approval for a bone scan, which was approved by Menard's insurer, Zurich American Insurance Co. On July 2, Dr. Bell reviewed the bone scan, diagnosed Lagler with compression fractures in her right foot, and determined she should continue wearing the CAM boot for another four weeks. By August 1, Lagler was still experiencing significant pain even though new imaging showed "solid union of her fractures." Dr. Bell suspected the straps of the CAM boot were responsible for Lagler's continuing pain. Although Dr. Bell concluded Lagler could safely transition out of wearing the boot, she continued to wear it.

[¶4.] Lagler's condition did not improve, but physical examination revealed no objective reason for her pain. On September 5, 2007, writing in Lagler's medical records, Dr. Bell noted: "[Lagler] is in for follow-up on her foot pain. She's really not doing any better. She's still complaining of a tremendous amount of kind of ankle, hind foot, mid foot pain." On September 24, after receiving Zurich's approval, Dr. Bell ordered magnetic resonance imaging (MRI) of Lagler's right ankle and foot. Based on the MRI, Dr. Bell determined that there were no abnormalities and that Lagler's ligaments and tendons were "intact without significant degenerative change." Unable to identify a cause of Lagler's continuing pain, Dr. Bell referred Lagler to another physician, with Zurich's approval.

[¶5.] Lagler began seeing Dr. David Watts, another board-certified orthopedic surgeon. On October 2, 2007, Lagler reported pain along her right instep. Dr. Watts injected lidocaine, a local anesthetic, into Lagler's posterior tibialis tendon, and she experienced nearly total relief. But when Dr. Watts asked Lagler to perform a single heel raise, she was not able to do so. Dr. Watts diagnosed Lagler with posterior tibialis tendinitis and concluded it was related to work. After conservative treatments were unsuccessful, Dr. Watts performed surgery on Lagler to repair the tendon. During surgery, Dr. Watts discovered that Lagler's tendon was frayed. Dr. Watts concluded that because Lagler had continuous pain in the same area since the April 2007 accident, her tendinitis and subsequent surgery resulted from a work-related injury.

[¶6.] Following surgery, Lagler was fitted with a progressive-weight-bearing CAM boot for rehabilitation. But on April 30, 2008, only three months after surgery, Lagler reported to P.A. Angela Majeres, who worked with Dr. Watts, that she had a resurgence of pain and new tenderness along her Achilles tendon. On June 2, Lagler returned to Dr. Watts and reported that while she no longer had pain in her posterior tibialis tendon, she was experiencing new pain along her Achilles tendon. Dr. Watts diagnosed her with Achilles tendinitis. He restricted her to sedentary work only.

[¶7.] Lagler continued to experience worsening and new pain. On July 30, 2008, Dr. Watts diagnosed Lagler with "Achilles tendinitis with retrocalcaneal bursitis." Retrocalcaneal bursitis is an inflammation of the bursa, which is a fluid-filled sac located between the tendon and bone. Dr. Watts opined that the

immediate cause of the inflammation was a congenital deformity in Lagler's foot known as "Haglund's deformity," which is a condition where the back of the heel pokes into the soft tissue near the Achilles tendon. In Dr. Watts's opinion, wearing a CAM boot after the April 2007 injury caused Lagler to change her gait, which in turn caused her congenital condition to become symptomatic. Thus, Dr. Watts concluded that Lagler's pain ultimately stemmed from her work-related injury. On August 6, 2008, Dr. Watts sought approval from Zurich to perform a second surgery on Lagler.

[¶8.]     Zurich assigned claims specialist Mary Lemieux to Lagler's case.[2] Lemieux's notes indicate she contacted Dr. Watts's office on August 6, 2008, to request information on the proposed procedure. Viewing the delay as a refusal to cover the second surgery, Lagler filed a petition for a hearing with the Department on August 28. Lemieux's notes during this time indicate she made several attempts to obtain information from Dr. Watts's office. On September 15, records indicate a 5.8-minute-long telephone call occurred between Lemieux and one of more than fifty extensions at Dr. Watts's office. Lemieux's notes describe the September 15 call: "Angie Roberts, Dr. Watts' nurse, called me. We discussed the etiology of this. Can be due to heels, i.e., pump bump but really it's more of an idiopathic condition. Not related to ankle injury. Is she then disabled due to the Haglund's? Yes, not due to the original injury." Testimony would later establish, however, that not only was this conversation not noted in Lagler's records, nobody in Dr. Watts's office is

---

2.    Lemieux had not been formally trained as a claims adjustor, nor did she have a background in medical diagnoses.

named "Angie Roberts." On September 17, without completing either an independent medical examination or an independent examination of Lagler's medical records, Zurich sent a fax to Dr. Watts's office that officially denied payment for Lagler's second surgery. And on September 22, Zurich stopped all disability payments to Lagler.

[¶9.]     On October 27, 2008, Lagler was examined by another orthopedic surgeon, Dr. Eric Watson. Dr. Watson agreed with Dr. Watts's diagnosis regarding Haglund's deformity and retrocalcaneal bursitis. Dr. Watson also concluded that the surgery proposed by Dr. Watts would relieve Lagler's pain, but Dr. Watson did not express an opinion as to whether Lagler's April 2007 injury caused her current symptoms. Believing that Lagler was running out of nonsurgical options, Dr. Watson recommended Lagler undergo a second surgery to correct her Haglund's deformity and to remove the inflamed bursa.

[¶10.]     After first denying coverage for a second surgery and terminating compensation, Zurich then engaged Dr. Richard Farnham to conduct an independent examination of Lagler's medical records.[3] Dr. Farnham did not physically examine Lagler; instead, he reviewed the treatment records of P.A. Ridenour and Drs. Rossing, Bell, Watts, and Watson. Dr. Farnham concluded that Lagler's April 2007 injury did not cause either her posterior tibialis tendinitis or her

---

3.     Dr. Farnham bills himself as a specialist in occupational medicine. Dr. Farnham is not board certified in occupational medicine, although he attempted to become so three times. He also started but failed to complete residency programs in both surgery and orthopedics.

Haglund's deformity. He also concluded that not even Lagler's first ankle surgery was causally related to the April 2007 injury.

[¶11.] On February 11, 2009, Lagler accepted Dr. Watson's recommendation, and Dr. Watson performed the surgery on February 19. Following her second surgery, Lagler initially reported that her condition was improving. But by the end of April 2009, she complained of swelling in her foot. Dr. Watson directed Lagler to engage in only sedentary work until July 15 and to work no more than 35 hours per week as tolerable. Eventually, Lagler could not tolerate even 35 hours per week, so on June 11, 2010, Dr. Watson changed the restriction to a maximum of 30 hours per week. Dr. Watson also referred Lagler to Dr. Jerry Blow, another board-certified physician. Dr. Blow evaluated Lagler on August 19 and reviewed her medical records and Dr. Watts's deposition. Dr. Blow agreed with Dr. Watts that Lagler's April 2007 injury was responsible for her posterior tibialis tendinitis and retrocalcaneal bursitis.

[¶12.] The financial and emotional impact of the foregoing on Lagler was severe. While she continued to work throughout 2007, she had no income between September 2008 and April 2009. And after returning to work, her physical limitations reduced the number of hours she could work in a week and, therefore, her income. Lagler did not have medical insurance, so when Zurich denied coverage for the second surgery, she had to borrow money from family members and cash in part of her retirement to make the down payment for the surgery. Zurich's termination of all workers'-compensation payments further reduced her ability to meet her financial obligations. In February 2011, Lagler's mortgagee foreclosed on

her home. Lagler's daughter offered her a home in Winner, South Dakota, and Lagler accepted because of both her need for a home and the emotional support her daughter could provide. Lagler terminated her employment with Menards on April 11, 2011. After moving to Winner, Lagler begin seeing Dr. Teresa Marts, who changed Lagler's work restrictions to sedentary only.

[¶13.] Lagler's workers'-compensation claim came before the Department for the first time on May 10, 2011. The parties agreed to bifurcate the proceedings. At the May 10 hearing, the Department considered whether Lagler's April 2007 injury was a major contributing cause of her need for two ankle surgeries. The Department issued a decision favorable to Lagler on September 9, 2011, concluding that both surgeries were compensable. The Department entered factual findings and legal conclusions on October 24. On February 3, 2012, the Department issued an order awarding Lagler $22,096 in unpaid medical bills and prejudgment interest.

[¶14.] On September 20, 2012, the Department held a second hearing. At the second hearing, the Department considered whether Lagler was entitled to permanent-total-disability (PTD) compensation. The Department issued a decision favorable to Lagler on January 11, 2013. The Department admitted evidence that the Social Security Administration found Lagler to be "disabled as of April 10, 2011." The Department also found that Lagler did not purposefully leave the Sioux Falls job market and that given her physical impairment, age, training, and experience, she would not be able to find suitable, regular employment in Winner. Also finding that Lagler is not a candidate for retraining, the Department concluded

she is permanently and totally disabled under the odd-lot doctrine.[4]  The Department entered factual findings and legal conclusions on February 11, 2013.

[¶15.]        On December 2, 2014, the Department held a third hearing.  This hearing addressed the questions whether Lagler was entitled to a lump-sum award and attorney's fees.  At the hearing, P.A. Majeres—the only person named "Angie" in Dr. Watts's office who was also involved in Lagler's care—testified but denied even knowing who Lemieux was, let alone having told her that Lagler's condition was unrelated to the April 2007 injury.  Lemieux did not testify at the hearing.  Even so, finding that Lemieux exercised "some diligence," the Department concluded that although Zurich's decision to deny further compensation was incorrect, it was not vexatious or without reasonable cause.  The Department issued a decision on April 29, 2015, granting Lagler's request for a lump-sum award but denying her request for attorney's fees.  The Department issued factual findings and legal conclusions reflecting its decision on June 4.  And on June 29, the Department entered a final order, incorporating the June 4 factual findings and legal conclusions.  The Department awarded Lagler $526,768 in total.[5]

[¶16.]        On July 13, 2015, Menard and Zurich filed a notice of appeal to the circuit court.  They appealed the following: (1) the Department's October 24, 2011

---

4.    The odd-lot doctrine "permits a finding of total disability for an injured claimant who, though able to work sporadically, cannot obtain regular employment and steady income and is thus considered an 'odd lot' in the labor market."  *Odd-lot doctrine*, *Black's Law Dictionary* (10th ed. 2014).

5.    This amount included $111,158, with $90,038 interest, for temporary-total-disability compensation; $259,936 for permanent-total-disability compensation; and $40,160, with $25,476 interest, for unpaid medical bills.

factual findings and legal conclusions; (2) the Department's February 3, 2012 order; (3) the Department's February 11, 2013 factual findings and legal conclusions; (4) the Department's June 4, 2015 factual findings and legal conclusions; and (5) the Department's June 29, 2015 order. In a statement of issues filed the same day, Menard and Zurich challenged both the award of compensation and the decision to award it as a lump sum. Lagler did not file a notice of review, but on July 15, she did file a statement of issues that challenged the Department's denial of her request for attorney's fees.

[¶17.] The circuit court heard the appeal on December 21, 2015. On February 17, 2016, the court issued a decision affirming the Department's decision regarding causation and Lagler's entitlement to compensation. However, the court reversed the Department's decision to award compensation as a lump sum. The court also reversed the Department's denial of attorney's fees. The court remanded the case back to the Department with instructions to recalculate the prejudgment interest due and to award Lagler reasonable attorney's fees under SDCL 58-12-3.

[¶18.] On remand, additional problems arose on both issues. The parties reached an agreement regarding the amount of prejudgment interest due. Despite the parties' agreement, the Department deviated from the stipulated amount of $171,919 and instead awarded $156,691. And in the circuit court's decision, the court noted that Lagler "produced evidence of reasonableness of her attorney's fees[,]" which totaled $103,632. The court ordered those fees be reimbursed under SDCL 58-12-3, but on remand, the Department instead awarded attorney's fees

under SDCL 62-7-36 in the amount of "30% of disputed amounts ($66,327.32) plus costs and sales tax." The Department issued a final order on June 6, 2016.

[¶19.] On June 17, 2016, Lagler filed a notice of appeal to the circuit court.[6] She appealed the following: (1) the Department's April 29, 2015 decision; (2) the Department's June 4, 2015 factual findings, legal conclusions, and order; (3) the Department's June 29, 2015 order; and (4) the Department's June 6, 2016 order. In a statement of issues filed on June 21, 2016, Lagler challenged the Department's calculation of prejudgment interest and attorney's fees. And although the court had already rejected Lagler's request for a lump-sum award in the first appeal, Lagler challenged the Department's denial of her request for a lump-sum award. Finally, Lagler requested taxation of disbursements in the amount of $7,443. Menard and Zurich filed a notice of review and statement of issues on July 6 addressing the issue of attorney's fees. For the first time in the history of this workers'-compensation case, Menard and Zurich argued that because Lagler failed to file a notice of review in the first appeal regarding the Department's initial denial of her request for attorney's fees, neither the Department nor the circuit court had jurisdiction over that matter after the Department's initial decision.

[¶20.] The circuit court considered the second appeal on October 4, 2016. The court rejected Menard and Zurich's jurisdictional argument and reaffirmed its February 17, 2016 decision. The court affirmed the Department's denial of Lagler's request for a lump-sum award. The court reversed the Department's calculation of

---

6. Due to a clerical error, this second appeal spawned a separate case number. The original case was filed as Civ. 15-153. The second appeal was filed as Civ. 16-134. The circuit court consolidated the two files.

prejudgment interest and attorney's fees. The court also denied Lagler's request for taxable disbursements. Instead of remanding, the court ordered Menard and Zurich to pay Lagler the amount stipulated by the parties in regard to prejudgment interest. The court also instructed the parties that it would resolve the attorney's-fees issue either by agreement of the parties or after further proceedings. On January 20, 2017, Lagler submitted a motion to the circuit court that requested attorney's fees. After a hearing on March 20, the court issued an order on April 4 that awarded Lagler $144,824 in attorney's fees.[7]

[¶21.] Now before this Court, Menard and Zurich appeal the circuit court's April 4, 2017 order. By notice of review, Lagler appeals the court's February 17, 2016 decision, its January 11, 2017 decision, and its April 4, 2017 order. The parties raise the following issues:

1. Whether the circuit court erred by affirming the Department's decision to award Lagler permanent-total-disability compensation.

2. Whether the circuit court erred by reversing the Department's decision to deny Lagler's request for attorney's fees.

3. Whether the circuit court erred by reversing the Department's decision to award compensation to Lagler in a lump sum.

4. Whether the circuit court erred by declining to tax additional expenditures of Lagler's.

---

7. The circuit court awarded Lagler the $103,632 she requested before the first appeal. The court awarded an additional $41,192 as reasonable attorney's fees for appellate and remand proceedings.

## Standard of Review

[¶22.] The central issue in this appeal is the adjudication of Lagler's right to workers' compensation, which occurred in a formal setting. Therefore, this appeal is governed by South Dakota's Administrative Procedures Act, SDCL chapter 1-26. Questions of law are reviewed de novo. *Dakota Trailer Mfg., Inc. v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d 545, 548. Matters of reviewable discretion are reviewed for abuse. SDCL 1-26-36(6). The agency's factual findings are reviewed under the clearly erroneous standard. SDCL 1-26-36(5). The agency's decision may be affirmed or remanded but cannot be reversed or modified absent a showing of prejudice. SDCL 1-26-36. The same rules apply on appeal to this Court. *See Dakota Trailer Mfg.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d at 548.

## Analysis and Decision

[¶23.] ***1.   Whether the circuit court erred by affirming the Department's decision to award Lagler permanent-total-disability compensation.***

[¶24.] Menard and Zurich first argue Lagler is not entitled to PTD compensation. They contend that Lagler failed to establish a causal connection between her April 2007 injury and the need for her second ankle surgery. They also contend that Lagler purposefully left the Sioux Falls job market and that consequently, PTD compensation is precluded. Finally, they contend Lagler's claim was not supported by reliable expert testimony.

[¶25.] In South Dakota, workers' compensation for injury or death is governed by SDCL chapter 62-4. A burden-shifting framework is used to establish permanent, total disability. "An employee has the burden of proof to make a prima facie showing of permanent total disability"—i.e., that "the employee's physical

-12-

condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." SDCL 62-4-53. If the employee makes this prima facie showing, "[t]he burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the employee in the community. The employer may meet this burden by showing that a position is available which is not sporadic employment resulting in an insubstantial income . . . ." *Id.* "Even though the burden of production may shift to the employer, . . . the ultimate burden of persuasion remains with the claimant." *McClaflin v. John Morrell & Co.*, 2001 S.D. 86, ¶ 9, 631 N.W.2d 180, 183-84.

[¶26.]     The Department concluded that Lagler "made a prima facie showing that she is obviously unemployable because of her physical condition, coupled with her education, training, and age." But Menard and Zurich contend Lagler cannot be permanently, totally disabled because she had regular, suitable work available. They claim that "in South Dakota, the absence of a medical opinion supporting a complete release from work vitiates the right to disability benefits." In their view, "unless a doctor established reliable work restrictions that Menards could not accommodate, Menard[] should have no exposure to additional disability benefits." Thus, because Menards accommodated the work restrictions established by Lagler's physicians, Menard and Zurich conclude there was a position available to Lagler: her job at Menards in Sioux Falls.

[¶27.] Menard and Zurich's argument fails to consider an important part of SDCL 62-4-53. As noted above, permanent, total disability is determined by examining the work available in the "employee's community." SDCL 62-4-53. The word *community* is statutorily defined as "the area within sixty road miles of the *employee's residence*[.]" SDCL 62-4-52(1) (emphasis added). Lagler's residence is in Winner, which is more than 60 miles away from Sioux Falls. Therefore, the availability of regular, suitable work in Sioux Falls is not relevant to the question whether Lagler is permanently, totally disabled.

[¶28.] Even so, an employee may not relocate simply to avoid available work. An employee who "purposefully leaves the labor market" is not entitled to permanent-total-disability compensation. *See* SDCL 62-4-53. The word *purposeful* is defined as "[h]aving a purpose; intentional." *The American Heritage College Dictionary* 1111 (3d ed. 1997). The word *purpose* means "[t]he object toward which one strives or for which something exists; an aim or a goal." *Id.* The record makes clear that Lagler did not move to Winner for the purpose of leaving the Sioux Falls labor market; rather, leaving the Sioux Falls labor market was an incidental effect of Lagler's decision to avoid homelessness by accepting her daughter's offer of a replacement home. Lagler testified that at the time, she did not have enough money to pay the deposit on an apartment, and so she thought her options were limited to living in her car or moving into the home owned by her daughter. As the Department noted, Zurich's decision to terminate workers' compensation "was at least partially responsible for [Lagler's] financial problems and her need to move."

[¶29.]     Menard and Zurich also contend that Lagler is required to produce expert-opinion evidence to establish that she is "obviously unemployable" and that she would not benefit from vocational rehabilitation. At the September 20, 2012 hearing, Lagler called Richard Ostrander, a vocational-rehabilitation counselor, to testify. Ostrander testified that Lagler is "obviously unemployable" and that she is not a candidate for vocational rehabilitation. During the appeal to the circuit court, Menard and Zurich challenged the basis of Ostrander's opinion that Lagler is obviously unemployable. The court agreed, noting that Ostrander "admitted that he did not review all of [Lagler's] medical records, and those records that he did have, were outdated." The court further found that Ostrander was not aware of Dr. Watson's most recent work restriction nor the later restriction advised by Dr. Marts. Thus, the court concluded that the Department's reliance on Ostrander's opinion was erroneous.

[¶30.]     Regardless, the circuit court's view of Ostrander's opinion on Lagler's employability does not support Menard and Zurich's argument. SDCL 62-4-53 requires an employee to make a prima facie showing of unemployability and to "introduce *evidence* of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile." (Emphasis added.) This statute says nothing about requiring an expert opinion to meet this burden. The record indicates that Dr. Marts advised Lagler to stay off her feet. The Department found that Lagler "made a thorough search for work without success." Lagler's own testimony during the September 20, 2012 hearing before the Department confirms this. Lagler testified that she inquired about employment with upward of

30 potential employers after moving to Winner. She also testified that for a time, she worked 15–16 hours per week with Winner School District and another 12 hours per week at a real-estate agency. At the time of the hearing, Lagler was employed by the hospital in Winner, but contrary to her physician's recommendation, the position required her to be on her feet most of the time.

[¶31.]      As for evidence of vocational rehabilitation, SDCL 62-4-53 does require an employee to "introduce *expert opinion evidence* that the employee is unable to benefit from vocational rehabilitation or that the same is not feasible." (Emphasis added.) As noted above, Ostrander testified at the September 20, 2012 hearing that Lagler was not a candidate for vocational rehabilitation. Although Menard and Zurich suggested Lagler could attend a local university, Ostrander testified that the placement rate "[i]n the office practices and clerical areas that [the university] offer[s] . . . is zero."[8] Ostrander further opined that he had been unable to find an online training course that would be feasible for Lagler. While the circuit court set aside Ostrander's opinion on Lagler's employability, the court's reason for doing so (i.e., Ostrander's failure to review all of Lagler's medical records) has little to do with Ostrander's opinion regarding Lagler's prospects for vocational rehabilitation.

[¶32.]      The circuit court did not err by affirming the Department's decision to award Lagler PTD compensation. Because Lagler's residence is in Winner, the availability of employment opportunities in Sioux Falls is not relevant. Lagler did not purposefully leave the Sioux Falls job market; her departure was an incidental

---

8.    The institution referred to is a four-year, private college, located over 40 miles away from Winner in Mission, South Dakota.

effect of finding replacement housing—a decision necessitated in part by Zurich's denial of all workers' compensation. SDCL 62-4-53 does not require expert-opinion evidence to establish either a prima facie showing of permanent, total disability or a showing of a reasonable, good-faith-work-search effort. And Lagler did provide expert-opinion evidence establishing that she is not a candidate for vocational rehabilitation.

[¶33.]     **2.     *Whether the circuit court erred by reversing the Department's decision to deny Lagler's request for attorney's fees.***

[¶34.]     Next, Menard and Zurich argue that Lagler is not entitled to attorney's fees. They contend that Lagler failed to file a notice of review from the Department's initial decision and that consequently, the circuit court never had jurisdiction over this issue. They further contend that even if the court had jurisdiction, it erroneously set aside the Department's finding that Zurich's denial of workers' compensation was not vexatious. Lagler responds that filing a statement of issues suffices to preserve an issue for review and that her failure to label the statement a notice of review is a mere technicality. She also responds that Zurich failed to properly investigate her entitlement to workers' compensation.

[¶35.]     **a.     *Jurisdiction to review denial of attorney's fees***

[¶36.]     The preliminary question to answer on this issue is whether the circuit court had appellate jurisdiction to review the Department's decision to deny attorney's fees as expressed in its April 29, 2015 decision, its June 4 factual findings and legal conclusions, and its June 29 order. Menard and Zurich contend that the statement of additional issues Lagler filed regarding the attorney's-fees issue should not be considered a notice of review. They further contend that under *Brown*

*v. Douglas School District*, 2002 S.D. 92, 650 N.W.2d 264, the failure to file a notice of review is fatal to the circuit court's jurisdiction over this issue. Lagler responds that her statement of issues should be liberally construed as a notice of review under *International Union of Operating Engineers Local No. 49 ex rel. Maack v. Aberdeen School District No. 6-1*, 463 N.W.2d 843 (S.D. 1990) (per curiam). As explained more fully below, although Lagler failed to file a notice of review, that failure did not deprive the court of jurisdiction to review the Department's decision regarding attorney's fees.

[¶37.]     Resolving this issue requires a review of the statutes governing administrative appeals. "[A]ny party in a contested case" may appeal "a final decision, ruling, or action of an agency" to circuit court. SDCL 1-26-30.2. A notice of appeal is required to contain only four things: (1) the names of the parties; (2) the name of the county to which the appeal is taken; (3) identification of the order or decision being appealed; and (4) the signature of the appellant or her attorney. SDCL 1-26-31.2. Within 10 days of filing the notice of appeal, the appellant must file "a statement of the issues the appellant intends to present on the appeal[.]" SDCL 1-26-31.4. Within 10 days of service of the appellant's statement of issues, an appellee may "file an additional statement of issues on appeal[.]" *Id.* And within 20 days of service of a notice of appeal, "[a]n appellee may obtain review of a final decision, ruling, or action of any agency which may adversely affect him by filing a notice of review with the clerk of the circuit court[.]" SDCL 1-26-36.1.

[¶38.]     Lagler contends her statement of additional issues should be considered a notice of review under *Maack*. In that case, a school district denied a

former employee's request for reinstatement.  *Maack*, 463 N.W.2d at 843.  The employee attempted to appeal by filing a document titled "request for conciliation." *Id.* at 843-44.  The Department treated the document as a notice of appeal, and the case proceeded without objection from the school district.  *Id.*  After the Department held in favor of the employee, the school district appealed to the circuit court.  *Id.* On appeal, the school district argued that the form titled "request for conciliation" was not a notice of appeal, and the court agreed.  *Id.*  Stating that "[n]otices of appeal should be liberally construed in favor of their sufficiency[,]" this Court reversed: "[U]nder the unique facts of this case, the text of the request filed by Maack was intended to be a notice of appeal, was treated as a notice of appeal by all parties involved, and constituted a notice of appeal . . . ."  *Id.*

[¶39.]        Lagler's reliance on *Maack* is misplaced.  In contrast to the request for conciliation at issue in *Maack*, there is no ambiguity as to what Lagler intended when she filed her statement of additional issues.  Lagler filed a document titled "Claimant's additional *statement of issues on appeal*."  (Emphasis added.)  Unlike a "request for conciliation," a "statement of issues on appeal" is the exact name of a document specifically identified in SDCL 1-26-31.4.  Indeed, the first line of text in Lagler's document states that she filed it "[p]ursuant to SDCL 1-26-31.4" (the statement-of-issues provision)—not SDCL 1-26-36.1 (the notice-of-review provision). Lagler provides no other reason to conclude that when she filed a statement of issues pursuant to SDCL 1-26-31.4, she really intended to file a notice of review pursuant to SDCL 1-26-36.1.

[¶40.]     As Menard and Zurich correctly point out, this Court has previously taken a strict view of a party's failure to file a notice of review. In *Brown*, a school-district employee appealed the Department's denial of PTD compensation. 2002 S.D. 92, ¶ 8, 650 N.W.2d at 267. Seeking review of "the Department's denial of a willful misconduct defense and award of benefits for an impairment rating[,]" the school district filed a statement of additional issues. *Id.* ¶ 31, 650 N.W.2d at 272. However, the school district did not attempt to file a notice of review until more than 20 days after the appellant filed her notice of appeal. *Id.* Rejecting the notice of review as untimely, the court concluded it "was without jurisdiction to hear the issues the [s]chool sought to have reviewed." *Id.* On appeal, this Court agreed that even though the school board timely filed its statement of additional issues, the failure to file a notice of review within 20 days of the notice of appeal was fatal to reviewing the issues raised in that statement. *Id.* ¶ 32, 650 N.W.2d at 272-73.

[¶41.]     However, cases like *Brown* conflate concepts of jurisdiction and issue waiver by suggesting that a court obtains jurisdiction to review *issues*. *Id.* ¶ 31, 650 N.W.2d at 272; *see also, e.g.*, *Whitesell v. Rapid Soft Water & Spas, Inc.*, 2014 S.D. 41, ¶ 10, 850 N.W.2d 840, 842 ("Such failure to file a notice of review precludes appellate review of that *issue*." (emphasis added)); *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 897 (S.D. 1995) ("An *issue* is not properly preserved for appeal when a party fails to file a notice of review . . . ." (emphasis added)). As SDCL chapter 1-26 makes clear, parties do not appeal *issues*—they appeal final *decisions*, *rulings*, or *actions* of an agency. SDCL 1-26-30.2, -36.1. And once a notice of appeal specifying such a decision, ruling, or action has been filed and

noticed, jurisdiction is immediately conferred on the court to review that decision, ruling, or action. *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 8, 728 N.W.2d 623, 628 ("[J]urisdiction is conferred by the filing of the notice of appeal . . . ."); *see also Stark v. Munce Bros. Transfer & Storage*, 461 N.W.2d 587, 589 (S.D. 1990) ("[T]he notice of appeal serves as a notice of transfer of jurisdiction from the executive branch to the judicial branch."). Thus, if an appellant files a notice of appeal identifying a particular decision, ruling, or action, filing a notice of review identifying the same would serve no purpose—the court's jurisdiction would have already been established by the filing of the notice of appeal.

[¶42.]     Once the circuit court's jurisdiction to review a particular decision, ruling, or action has been established—either through the filing of a notice of appeal or a notice of review—the question then becomes one of issue waiver. As indicated above, the appellant must file a statement of the issues to be presented on appeal, and the appellee may file such a statement as well. SDCL 1-26-31.4. In other words, once jurisdiction is established, the parties must preserve their arguments for review by stating their reasons why the agency decision, ruling, or action identified as the object of the appeal should be reversed or modified. While the failure to specify a decision, ruling, or action in a notice of appeal or notice of review results in a lack of jurisdiction to review the same, the failure to file a statement of issues results in a waiver of argument. And while either lack of jurisdiction or waiver of argument results in a denial of relief on appeal, they do so in fundamentally different ways (a lack of jurisdiction—which may be raised at any

time—is a mandatory restraint on the court's power to act, but waiver is a restraint on a party's arguments that gives a court discretion to disregard them).

[¶43.]     In light of the foregoing, Lagler's failure to file a notice of review did not deprive the circuit court of jurisdiction to review the Department's denial of Lagler's request for attorney's fees.  The Department denied her request in its April 29, 2015 decision, its June 4 factual findings and legal conclusions, and its June 29 order, each of which Menard and Zurich specifically identified in their notice of appeal as agency actions they sought to have reviewed.  Therefore, under SDCL 1-26-30.2, the circuit court obtained jurisdiction to review the Department's decision to deny attorney's fees upon Menard and Zurich's filing the notice of appeal, *see Fair*, 2007 S.D. 16, ¶ 8, 728 N.W.2d at 628, and Lagler's statement of issues preserved her argument regarding that agency action for review.  Consequently, the court did not err by reviewing the Department's denial of Lagler's request for attorney's fees.

[¶44.]     ***b.     Merits of decision to deny attorney's fees***

[¶45.]     Turning to the merits of the attorney's-fees issue, Menard and Zurich next contend the circuit court erroneously set aside the Department's finding that Zurich's denial of workers' compensation was not vexatious.  Lagler asked the Department to award her attorney's fees under SDCL 58-12-3.  Under that statute, the Department is required to award attorney's fees

> [i]n all actions or proceedings . . . commenced against any . . . insurance company, . . . on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause[.]

SDCL 58-12-3. An insurer has a "duty to conduct a good-faith investigation of [a] claim[.]" *Eldridge v. Nw. G.F. Mut. Ins. Co.*, 88 S.D. 426, 434, 221 N.W.2d 16, 21 (1974). Thus, if an insurer refuses coverage after making "an inadequate investigation" of a claim, such refusal is "without reasonable cause." *Id.* An agency's determination of whether a refusal is "vexatious or without reasonable cause is a finding of fact and thus will not be reversed unless . . . clearly erroneous." *Kern v. Progressive N. Ins. Co.*, 2016 S.D. 52, ¶ 32, 883 N.W.2d 511, 518.

[¶46.] In this case, the Department found that Zurich had reasonable cause to deny coverage of Lagler's claim. The Department based its finding on the September 15, 2008 conversation noted in Lemieux's claim notes. That note states:

> angie roberts, dr. watts nurse called me. we discussed the etiology of this. can be due to heels, ie [sic] pump bump but really ti's [sic] more of an idiopathic condition. not related to ankle injury. is she then disabled due to hte [sic] haglund's? yes, not due to the original injury.

In regard to Lemieux's note, the Department said:

> We do not know with whom Lemieux spoke during that conversation. It was not Dr. Watt's [sic] Physician Assistant, Angela Majeres, who probably knew more about Lagler's case than anyone else in the office other than Dr. Watts. It is more likely than not that it was with a nurse in the office because the claim entry indicates that it was a nurse. Despite the fact that the name of the individual indicated by Lemieux's entry is incorrect, does not lead to the inevitable fact that notation of the rest of the conversation was false or fabricated.
>
> Indeed, the Department believes that the substance of the conversation was much as described in Lemieux's claims entry. She knew nothing about the condition prior to the phone conversation. In addition, some of the details in the claims entry are correct in a general sense, despite the facts that some of the particulars did not apply in Lagler's case. For example, the bursitis is sometimes caused by heels or pumps and the cause is sometimes idiopathic. ·

> While the nurse may have been speaking in general terms rather than the specifics of Lagler's case, the Department finds that this conversation was a legitimate basis for Lemieux's denial. Therefore, the Insurer's denial of Lagler's second surgery was neither vexatious nor with[out] reasonable cause.

On appeal, the circuit court concluded that the Department's reasonable-cause finding regarding Zurich's denial of coverage was clearly erroneous.

[¶47.] A complete review of the record supports the circuit court's conclusion. First, the veracity of Lemieux's note is dubious at best. Lemieux did not testify in person before the Department; rather, her testimony was presented as a deposition. Even though a favorable medical opinion could have absolved Zurich of responsibility for Lagler's second surgery, Lemieux failed to accurately identify the source of her information. There is no "Angie Roberts" in Dr. Watts's office, and the only person named "Angie" that would have any knowledge of Lagler's case is Angela Majeres, who is a P.A., not a nurse. Not only did P.A. Majeres testify that she never spoke to Lemieux, Lagler's medical records do not indicate that anyone from Dr. Watts's office discussed her condition with Lemieux. Moreover, Lemieux's claim that *somebody* from Dr. Watts's office told her that Lagler's symptoms were unrelated to the April 2007 injury requires believing that this unidentified nurse would directly contradict Dr. Watts's explicit medical opinion. In a note dated July 30, 2008, Dr. Watts opined that Lagler's symptoms were "sustained from a work comp related injury." And then on August 6, Dr. Watts indicated in another note that Lagler described her "pain in her heel area to be present since her initial injury at work back in . . . April 2007."

[¶48.] Even if it is assumed that an unidentified nurse called Lemieux on September 15, 2008; that the nurse gave a medical opinion contradicting Dr.

Watts's; and that against office policy, the nurse failed to note the conversation in Lagler's file; such would be insufficient to establish that Lemieux fulfilled her duty to conduct a good-faith investigation. Relying on the opinion of even a physician is not per se reasonable. *See Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.*, 2016 S.D. 70, ¶¶ 12-14, 886 N.W.2d 322, 325-26 (discussing reasonableness in context of tort action alleging bad-faith denial of benefits). And regardless of what the unidentified nurse said, Lemieux necessarily knew that Dr. Watts submitted a request to Zurich to pay for the second surgery, which should have strongly suggested to Lemieux that Dr. Watts considered Lagler's symptoms to be related to the workers'-compensation claim. At the very least, then, Lemieux should have investigated further. Yet, Lemieux did not obtain an independent medical examination of Lagler. Nor did Lemieux obtain an independent review of Lagler's medical records prior to denying coverage. So despite the medical opinion of Lagler's treating physician, Dr. Watts, and without a contrary opinion from any other physician, Lemieux—who does not have medical training—decided to deny coverage for Lagler's second surgery and to terminate all workers' compensation.

[¶49.] The foregoing is sufficient to create "a definite and firm conviction" that the Department made a mistake. *Moulton v. Moulton*, 2017 S.D. 73, ¶ 6, 904 N.W.2d 68, 71 (quoting *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333, 336). Even if Lemieux acted with "some diligence," her conduct fell far short of a good-faith investigation of Lagler's claim. *See Lewis v. State Dep't of Transp.*, 2003 S.D. 82, ¶¶ 7, 9, 30-36, 667 N.W.2d 283, 286-87, 291-92 (concluding denial of coverage unreasonable where adjuster failed to obtain medical opinions, review

documentary evidence, or otherwise investigate prior to decision). Therefore, the circuit court correctly concluded that the Department's reasonable-cause finding is clearly erroneous, and Lagler was entitled to attorney's fees.

[¶50.]       **3.       *Whether the circuit court erred by reversing the Department's decision to award compensation to Lagler in a lump sum.***

[¶51.]       Next, Lagler argues she is entitled to receive workers' compensation in a lump sum. Generally, awarding workers' compensation in a lump sum is disfavored. *Stuckey v. Sturgis Pizza Ranch*, 2011 S.D. 1, ¶ 7, 793 N.W.2d 378, 382. But as an exception, SDCL 62-7-6 authorizes the lump-sum payment of unpaid workers' compensation if such is "in the best interests of the employee[.]" To qualify for a lump-sum payment of PTD compensation, an employee must also demonstrate that she "has exceptional financial need that arose as a result of reduced income due to the injury" or that a lump-sum payment is "necessary to pay the attorney's fees, costs and expenses approved by the department under § 62-7-36." SDCL 62-7-6. In any event, "any awards of lump sum payments must be made in accordance with the goal of preserving future wage replacement benefits." *Thomas v. Custer State Hosp.*, 511 N.W.2d 576, 581 (S.D. 1994).

[¶52.]       The first question, then, is whether a lump-sum payment is in Lagler's best interest. This Court has previously identified several factors that weigh on the question of best interests:

1. Age, education, mental and physical condition, and actual life expectancy.
2. Family circumstances, living arrangements, and responsibilities to dependents.
3. Financial condition, including all sources of income, debts and living expenses.

4. Reasonableness of plan for investing the lump sum proceeds and ability to manage invested funds or arrangement for management by others.

*Steinmetz v. State, DOC Star Academy*, 2008 S.D. 87, ¶ 11, 756 N.W.2d 392, 396-97 (quoting *Enger v. FMC*, 2000 S.D. 48, ¶ 13, 609 N.W.2d 132, 135). Lagler is 58 years old, is in relatively good health, has a life expectancy of 83, and still has several years before she could begin receiving Social Security retirement benefits at age 62. She has a high-school diploma, and she attended cosmetology school. She does not have any dependents to support, and because she is living in a home owned by her daughter, Lagler is no longer in danger of losing her home. Due in part to the circumstances of this case, Lagler has several debts, including creditor judgments totaling several thousand dollars, loans from family members totaling at least $10,000, and unpaid medical bills totaling $40,160. Lagler's most current financial data at the time of the third hearing before the Department indicated that her annual income was approximately $21,000.[9] She contends that she has an investment plan that will "sustain her for several years."

[¶53.]     While the Department granted Lagler's request for a lump-sum award, the circuit court reversed for three reasons. Although the court recognized the debts that Lagler has accumulated, the court pointed out that Lagler is entitled to nearly $200,000 in past-due temporary-total-disability (TTD) compensation. As the court noted, "immediate payment of past due temporary total disability of nearly $200,000 will cover the judgments and debts [Lagler] owes, and may even pay for a

---

9. Lagler's brief indicates that in 2013, she received $7,897 in wages and $13,261 in Social Security disability payments.

home in Winner." The court was also skeptical of Lagler's investment plan. The court found that Lagler's "plan does not contemplate cost of living adjustments" or "secure funds from unplanned withdrawals so as to prevent sudden dissipation of funds." And finally, the court was concerned about the effect a lump-sum award might have on Lagler's eligibility for Social Security disability benefits. In her brief to this Court, Lagler does not address any of the court's three concerns.

[¶54.]     The circuit court did not err by reversing the Department's decision to award Lagler a lump-sum payment. None of the factors listed above, *see supra* ¶ 52, supports a lump-sum award. Considering Lagler's health and life expectancy, her PTD compensation will need to serve as a substitute for wages for decades to come, but because of the problems highlighted by the court, her proposed investment plan does not guarantee the same longevity. Lagler does not have any dependents, and she now has stable housing. Moreover, the amount Lagler will receive in past-due TTD payments will cover her existing debts and other immediate needs. And because Lagler is entitled to recover her attorney's fees, she will not have those to worry about either. Thus, as the circuit court concluded, "[c]onsidering the payment of TTD to cover [Lagler's] debts and purchase a home, the shortcomings of the investment plan, and the unknown effect on her social security disability, a lump-sum payment of PTD benefits is not in [Lagler's] best interests."

**[¶55.]**    ***4.    Whether the circuit court erred by declining to award additional costs to Lagler.***

**[¶56.]**    Finally, Lagler claims the circuit court erred in denying her request to tax additional disbursements under SDCL 15-17-37 in the amount of $7,443 to Menard and Zurich.[10]  Lagler devotes three sentences to this issue.  She does not offer any details on these disbursements or explain whether they fall within the narrow scope of SDCL 15-17-37.  She does not explain the circuit court's decision, let alone offer argument and analysis as to how that decision is erroneous.  And aside from generally citing SDCL 15-17-37, Lagler does not offer any supporting authorities.  Appellate briefs must "contain the contentions of the party with respect to the issues presented, the reasons therefore, and the citations to the authorities relied on."  SDCL 15-26A-60(6).  Therefore, an issue that is not supported by argument and authority is waived.  *See id.*; *State v. Stanley*, 2017 S.D. 32, ¶ 12, 896 N.W.2d 669, 675.

**[¶57.]**    Even if Lagler had presented argument and authority on this issue, the record supports the circuit court's denial of Lagler's request.  Of the $7,443 that Lagler requested after the second appeal, $6,620 was incurred prior to the trial before the Department.  In those initial proceedings, Lagler already requested the Department tax those costs as disbursements against Menard and Zurich.  The Department denied Lagler's request.  It is undisputed that Lagler did not appeal

---

10.    SDCL 15-17-37 permits "[t]he prevailing party in a civil action or special proceeding [to] recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial."

that decision.  Therefore, in regard to $6,620 of the $7,443, Lagler failed to preserve this issue for appeal.

[¶58.]     The remaining $823 of Lagler's request relates to costs incurred during appellate and remand proceedings.  The taxation of disbursements under SDCL 15-17-37 is a matter of discretion.  *DeHaven v. Hall*, 2008 S.D. 57, ¶ 48, 753 N.W.2d 429, 444.  "The authority to tax [disbursements] should not be implied, but must rest upon a clear legislative grant of power to do so."  *Id.* ¶ 41, 753 N.W.2d at 442 (quoting *In re Estate of O'Keefe*, 1998 S.D. 92, ¶ 18, 583 N.W.2d 138, 142).  Thus, this Court has "urged courts to use cautious restraint and allow only those disbursements 'specifically authorized by SDCL 15-17-37.'"  *DeHaven*, 2008 S.D. 57, ¶ 48, 753 N.W.2d at 444 (quoting *Lewis v. Aslesen*, 2001 S.D. 131, ¶ 10, 635 N.W.2d 744, 747).  Heeding this Court's warning, the circuit court noted that while SDCL 15-17-37 authorizes "expenditures necessarily incurred in gathering and procuring evidence or bringing [a] matter *to trial*[,]" it does not authorize expenditures incurred during appeal or remand proceedings.  (Emphasis added.)  Given this Court's narrow view of taxable disbursements, the court's decision to deny Lagler's request for taxation of expenditures made on appeal and remand was not an abuse of discretion.

## Conclusion

[¶59.]     The circuit court did not err by affirming the Department's decision to award Lagler permanent-total-disability compensation.  Nor did the court err by reversing the Department's decision to deny Lagler's request for attorney's fees.  The court correctly determined that Lagler was not entitled to a lump-sum award.

Finally, the court did not err by denying Lagler's request for taxation of expenditures.

[¶60.]     We affirm.

[¶61.]     ZINTER and JENSEN, Justices, concur.

[¶62.]     SEVERSON, Retired Justice, and KERN, Justice, concur in part and concur in result in part.

SEVERSON, Retired Justice (concurring in part and concurring in result in part).

[¶63.]     Although I agree that, in this case, Lagler's "community" is Winner rather than Sioux Falls, I do not believe this Court should broadly state that "the availability of regular, suitable work in Sioux Falls is not relevant to the question whether Lagler is permanently, totally disabled." Majority Opinion ¶ 27. Indeed, the word *community* is defined as "the area within sixty road miles of the employee's residence," and Lagler lives in Winner, which is not within 60 miles of Sioux Falls. *See* SDCL 62-4-52(1). But it is important to highlight that Lagler did not seek to recover permanent total disability benefits during the time she resided in Sioux Falls. Had she claimed entitlement to permanent total disability benefits from the date of her injury, Lagler would have been required to make a prima facie showing "in the community in which she resided when injured to recover for that period." *See Reede v. S.D. Transp.*, 2000 S.D. 157, ¶ 18, 620 N.W.2d 372, 376. As we recognized in *Reede*, "[a]n entitlement to benefits in a single community, based on an inability to secure anything more than sporadic employment, does not allow a claimant to recover benefits for periods outside that community." *Id.* ¶ 20.

[¶64.]     Further, although I agree that there are limits to an employee's right to relocate and receive workers' compensation, *see* Majority Opinion ¶ 28, this case does not concern whether Lagler *purposefully left the labor market* as used in SDCL 62-4-53. Under the burden-shifting framework in SDCL 62-4-53, Lagler had to make a prima facie showing that her "physical condition, in combination with [her] age, training, and experience and the type of work available in [her] *community*, cause [her] to be unable to secure anything more than sporadic employment resulting in an insubstantial income." (Emphasis added.) The question whether an employee purposefully leaves a labor market comes into play *after* the employee makes a prima facie showing and *after* the employer "shows that some form of suitable work is regularly and continuously available to the employee in the community[.]" *See id.*

[¶65.]     Therefore, the proper inquiry is whether Lagler's "change of community was done in good faith, and not for improper motives[.]" *Reede*, 2000 S.D. 157, ¶ 20, 620 N.W.2d at 376. Indeed, the record reveals that the Department examined Lagler's motive and whether the move was done in good faith. It concluded that Lagler's move to Winner "was done in good faith and not to withdraw from the Sioux Falls job market or to collect workers' compensation benefits." The Department found: (1) Lagler's "move provided her with a place to live and the emotional support she needed at the time from her family"; (2) Lagler was not required to enter bankruptcy before choosing to move; (3) Lagler was not required to sacrifice her safety and comfort; and (4) Lagler was not required to explore all options that would allow her to stay in Sioux Falls before she chose to

move to Winner. Because the Department examined whether Lagler's move to Winner was done in good faith and not for improper motives, and Menard has not established that the Department's findings are clearly erroneous, I would affirm the Department's conclusion that Lagler's "community" is Winner.

[¶66.] Nevertheless, Menard also claims that the Department erred when it concluded that Lagler is obviously unemployable in her community. On this claim, the Majority Opinion declares that "SDCL 62-4-53 requires an employee to make a prima facie showing of unemployability and to 'introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile.'" Majority Opinion ¶ 30. But Lagler was not required to prove that she made a reasonable, good faith effort to find employment because the Department found that Lagler is *obviously unemployable*. *See Kassube v. Dakota Logging*, 2005 S.D. 102, ¶ 34, 705 N.W.2d 461, 468 ("[I]f the claimant is 'obviously unemployable,' he will not bear the burden of proving 'that he made reasonable efforts to find employment in the competitive market.'" (quoting *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 232 (S.D. 1994)).

[¶67.] Thus, to address Menard's claims, the inquiry on appeal is whether the Department erred when it held that Lagler is obviously unemployable. This Court has said that a "claimant has two avenues to make the required prima facie showing for inclusion in the odd-lot category[.]" *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 19, 728 N.W.2d 623, 632. First, a claimant may show "obvious unemployability" by: "(1) showing that his 'physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability

category,' or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims." *Id.* (quoting *Kassube*, 2005 S.D. 102, ¶ 34, 705 N.W.2d at 468). Here, Lagler showed obvious unemployability under the first avenue.

[¶68.] "[I]f the claimant is obviously unemployable, then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's *community* for persons with claimant's limitations." *Id.* (emphasis added). The Department found that Menard did not meet its "burden of showing that work is regularly and continuously available to [Lagler] in the *Winner* area." (Emphasis added.) Although Menard claims Lagler is not obviously unemployable, it bases its argument on the fact that regular and continuous employment is available to Lagler in *Sioux Falls*. Menard's argument ignores that Lagler's "community" under SDCL 62-4-53 is Winner.

[¶69.] Because Menard has not established that the Department erred when it held that Lagler showed that her physical condition, coupled with her education, training, and age, made it obvious that she is unemployable in *Winner*, we need not examine whether Lagler engaged in a reasonable, good faith search for work in Winner. (*See, e.g.,* Majority Opinion ¶ 30). We similarly need not examine Menard's claim that Lagler was required to produce expert testimony that she is unable to benefit from vocational rehabilitation or that the same is not feasible. (*See, e.g.,* Majority Opinion ¶ 31). For these reasons, I concur in result only on issue one.

[¶70.] On issue two, I also concur in result only. I agree that the circuit court had *subject matter jurisdiction* over the Department's decisions, rulings, and actions because of Menard's notice of appeal from the same. However, based on a reading of the statutes governing administrative appeals and this Court's past cases, an appellee's filing of a statement of additional issues under SDCL 1-26-31.4 does not preserve the appellee's right to obtain review. Majority Opinion ¶ 43. This is true even if this Court has in the past called it a jurisdictional defect instead of issue waiver.

[¶71.] SDCL 1-26-30 gives "[a] person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case" the right "to judicial review under this chapter." The plain language of this statute is not limited to one or another party. More specifically, "[a]n appeal shall be allowed in the circuit court to any party in a contested case from a final decision, ruling, or action of an agency." SDCL 1-26-30.2. Again, the statute does not limit the right to appeal to a particular party—it is a right given to "any party."

[¶72.] In regard to how an appeal may be taken *by an appellant*, SDCL 1-26-31 outlines the timing and filing requirements. An appellant must file a notice of appeal within 30 days of service of the agency decision, ruling, or action. *Id.* Then, if an appellee wishes to obtain review of an agency decision, ruling, or action, the appellee must file a notice of review within 20 days of service of the appellant's notice of appeal. SDCL 1-26-36.1. Running *within* these time requirements, the appellant has ten days after filing its notice of appeal to file a statement of issues

*and* the appellee has 10 days after service of the appellant's statement of issues to file a statement of additional issues. SDCL 1-26-31.4. Considering these time requirements together, the appellee would be filing its notice of review *and* statement of additional issues on the same day.

[¶73.]     We have said that an appellant's failure to file a statement of issues is not a jurisdictional defect so long as the appellant has timely filed a notice of appeal. But we have never said that an appellee's filing of a statement of additional issues preserves the right to obtain review despite the appellee's failure to file a notice of review. Indeed, in a similar context, an appellee's failure to file a notice of review to the Supreme Court waives the appellee's issue for review. SDCL 15-26A-22.

[¶74.]     To conclude, as the Majority Opinion has, that an appellee need not comply with SDCL 1-26-36.1 so long as the *appellant's* notice of appeal identifies the same "order or decision from which the appeal is taken" unnecessarily creates new law. Majority Opinion ¶ 43. Here, the circuit court had subject-matter jurisdiction to consider the attorney fee issue, *and* the court addressed the merits of the issue without objection from Menard. Menard knew Lagler intended to challenge the attorney fees issue and knew that Lagler did not file a notice of review. Nevertheless, Menard fully briefed and argued the issue in response to Lagler's briefing and argument. More importantly, Menard did not object until after the circuit court decided the merits of the issue, issued a decision remanding the case, and the Department issued a new order.

[¶75.]     More specifically, the record reveals that in June 2015, the Department issued findings of fact and conclusions of law denying Lagler's request for an award of attorney fees. Menard appealed the Department's decision to the circuit court. Lagler did not file a notice of review in response to Menard's appeal but submitted a statement of additional issues and asserted that the Department erred when it denied Lagler's request for an award of attorney fees. Lagler then briefed the issue to the circuit court. Menard responded to Lagler's argument in its reply brief. Menard did not allege that Lagler failed to file a notice of review and thus waived the right to obtain review. Instead, Menard fully briefed and argued against Lagler's claims.

[¶76.]     In February 2016, the circuit court issued a memorandum decision addressing the issues raised by Menard and Lagler. On Lagler's attorney fee issue, the court held that Lagler "is entitled to have her attorneys' fees paid by Employer/Insurer." After addressing all issues, the circuit court affirmed the Department's decision in part, reversed in part, and remanded in part. Following remand, the Department issued a decision. In addition to addressing other matters on remand, the Department entered an order awarding Lagler attorney fees at "30% of the disputed amount ($66,327.32) plus costs and sales tax." Lagler appealed the Department's June 2016 Order Following Remand as well as the Department's previous orders entered prior to the first appeal. In her statement of issues to the circuit court, Lagler asserted, among other issues, that "Department erred in its application of law and/or calculation of the amount of attorney fees and expenses awarded to Claimant pursuant to SDCL 58-12-3 in the Order Following Remand."

[¶77.]     In July 2016, Menard, for the first time, challenged the circuit court's jurisdiction to consider Lagler's attorney fee issue. Menard filed a motion to dismiss Lagler's appeal, claiming that because Lagler failed to file a notice of review in the previous appeal to the circuit court after the Department's June 2015 decision, Lagler failed to preserve the issue for the circuit court's review. *See* SDCL 1-26-36.1. Lagler conceded that she did not file a notice of review in the previous appeal. But she claimed that the circuit court had subject matter jurisdiction in that previous appeal upon Menard's filing of a notice of appeal, and therefore, the court properly considered the issue.

[¶78.]     In January 2017, the circuit court issued a memorandum decision. It noted that although Lagler did not file a notice of review in response to Menard's notice of appeal, Menard did not object in the previous appeal. The court further highlighted that Menard "briefed and argued the original Statement of Issues [filed by Lagler] on the merits, including SDCL 15-12-3." Because Menard was aware that Lagler intended to challenge the attorney fee issue and made arguments and submitted briefs on the issue, the court declined to rule that Lagler waived the right to obtain review. The court found compelling that Menard admitted that it was "late to the game" in objecting. The court wrote: "Having played the attorney fees game and lost, only now does [Menard] raise its objection and claim that the game should never have been played."

[¶79.]     On appeal to this Court, Menard avers that Lagler's failure to file a notice of review is a jurisdictional defect, which issue Menard claims can be raised anytime. On the contrary, as stated above, the requirement to file a notice of review

-38-

is not jurisdictional; it is procedural. As a procedural rule, waiver is not necessarily automatic. *See, e.g.*, *State v. Gard*, 2007 S.D. 117, ¶¶ 15-16, 742 N.W.2d 257, 261 (waived issues may nonetheless be addressed); *In re J.D.M.C.*, 2007 S.D. 97, ¶ 27, 739 N.W.2d 796, 805 (the "rule is procedural and we have discretion to ignore the rule when faced with a compelling case"); *Nature's 10 Jewelers v. Gunderson*, 2002 S.D. 80, ¶ 19, 648 N.W.2d 804, 808-09 (Konenkamp, J., dissenting); *Sharp v. Sharp*, 422 N.W.2d 443, 445-46 (S.D. 1988) ("We must, however, emphasize this is merely a rule of procedure and not a matter of jurisdiction."). Therefore, although Lagler did not file a notice of review and that failure would ordinarily result in a waiver of the right to obtain review, no such waiver exists under the circumstances of this case.

[¶80.]     Therefore, I agree in result that "the court did not err by reviewing the Department's denial of Lagler's request for attorney's fees." Majority Opinion ¶ 43.

[¶81.]     KERN, Justice, joins this special writing.