#28660-a-DG
**2019 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DEBRA LEE ANDERSON,                              Petitioner and Appellant,

  v.

SOUTH DAKOTA
RETIREMENT SYSTEM,                               Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GORDON D. SWANSON
Judge

* * * *

JAMES D. LEACH
Rapid City, South Dakota                         Attorney for petitioner and
                                                 appellant.


ROBERT B. ANDERSON
JUSTIN L. BELL of
May, Adam, Gerdes and
  Thompson, LLP
Pierre, South Dakota                             Attorneys for respondent and
                                                 appellee.

* * * *

ARGUED JANUARY 8, 2019
OPINION FILED **02/20/19**

#28660

GILBERTSON, Chief Justice

[¶1.] Debra Lee Anderson and Deborah Cady were committed partners who worked for the Rapid City Police Department (RCPD). Cady retired from the department in May 2012. The couple married on July 19, 2015. Cady passed away on March 10, 2017. Upon Cady's passing, Anderson applied for survivor spouse benefits under Cady's retirement plan with the South Dakota Retirement System (SDRS). The SDRS denied Anderson's application claiming Anderson and Cady were not married at the time of Cady's retirement and Anderson did not meet the definition of a "spouse" needed to qualify for survivor benefits. Anderson appealed to the South Dakota Office of Hearing Examiners (OHE) and then to the circuit court, which both affirmed the SDRS. Anderson now appeals the order of the circuit court. We affirm.

**Facts and Procedural History**

[¶2.] The facts of this case are undisputed. Cady was employed by the RCPD. She was enrolled in the SDRS in 1986 and continued her enrollment for 26 years until her retirement on May 1, 2012. Throughout her service, Cady advanced from sergeant to lieutenant and finally served as one of two captains who reported directly to the chief of police. Cady attained the highest rank of any female officer in the history of the RCPD at the time.

[¶3.] Cady met Anderson in 1986. The two became good friends and eventually professed their love for one another. The couple started living together in July 1988. Anderson described their relationship as "wonderful" and considered Cady to be her "soul mate." Anderson stated that the couple built and shared a

home together, made decisions together, and supported each other's career and personal choices. They considered themselves to be married, even though they were not legally married at the time.

[¶4.] Anderson was also employed by the RCPD and worked as commander of the uniform division and in supervisory roles. Two chiefs of police under whom Cady and Anderson served stated that the couple was well known in the RCPD to be committed partners. According to the late Craig Tieszen, RCPD Chief of Police from 2000–2007, there were no issues within the department about accepting Cady and Anderson's relationship. Current Chief of Police Karl Jegeris testified that since he began working at the RCPD in 1995, it was very clear that the two were a committed couple and had the same relationship as anyone who was married. Jegeris went so far as to state that "[o]ur department considers them a married couple, period, end of story. I speak on behalf of the department." Anderson also agreed that she and Cady were a well-known couple for many years in the RCPD.

[¶5.] In 2004, Cady was diagnosed with breast cancer. Anderson stated that she assisted Cady through the difficult ordeal, which included surgery, chemotherapy, a period of remission, the return of cancer and more chemotherapy, and the decision to end chemotherapy. Anderson stated that during this period, she and Cady were "very devoted and very loving to each other." On May 1, 2012, Cady retired from the RCPD due to cancer. Cady then applied for SDRS benefits, listing herself as single on the application.

[¶6.] Anderson testified that she and Cady had spoken about getting married both when Massachusetts legalized same-sex marriage in 2003, and when

Iowa legalized same-sex marriage in 2009. In 2009, Cady surprised Anderson with matching rings. Anderson testified that the couple had "agreed that [they] would marry. But for [them] it was going to have to be when it was either recognized by the State of South Dakota, which is where [they] resided and worked, or by the Federal Government, you know, as a nation as a whole." Anderson stated that she and Cady felt this way because they were employed in law enforcement. Anderson noted that as police officers, she and Cady took an oath to "the U.S. Constitution, the Constitution of the State of South Dakota, and the laws. And at that time, you know, South Dakota wouldn't recognize it." In Anderson's view, "[e]ven if [they] went to Iowa and would have married, it still wouldn't have been recognized in the State of South Dakota."

[¶7.]        In 2015, the United States Supreme Court handed down its decision in *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015). In *Obergefell*, the Court stated:

> [T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty. The Court now holds that same-sex couples may exercise the fundamental right to marry. No longer may this liberty be denied to them.

*Id.* at ___, 135 S. Ct. at 2605-06. Twenty-three days after *Obergefell* was decided, Anderson and Cady were married in Las Vegas, Nevada on July 19, 2015.

[¶8.]        On March 10, 2017, Cady passed away after her long battle with breast cancer. On March 20, 2017, Anderson applied for survivor benefits through the SDRS. On April 24, 2017, the SDRS denied Anderson's application via a letter,

stating Anderson and Cady were not married at the time of Cady's retirement and Anderson did not meet the definition of a "spouse" to qualify for survivor benefits. Anderson replied to the SDRS by letter on July 7, 2017. The reply was treated as an appeal and a hearing was held before the OHE on October 31, 2017.

[¶9.] On December 1, 2017, the OHE issued a written decision, including findings of fact and conclusions of law, affirming the SDRS's decision to deny Anderson survivor benefits. On December 4, 2017, Anderson made a motion proposing supplemental findings of fact and conclusions of law, which the OHE rejected. Anderson appealed the OHE's decision to affirm the SDRS's decision to the circuit court. On June 14, 2018, the circuit court entered a memorandum decision and order affirming the decision of the OHE. Anderson now appeals the order of the circuit court. We combine and restate the issues raised as follows: Whether the circuit court erred by denying survivor spouse benefits to Anderson.

## Standard of Review

[¶10.] The central issue in this appeal is the propriety of the adjudication of Anderson's right to survivor benefits, which adjudication occurred through the SDRS and the OHE, two administrative agencies. This appeal is therefore governed by South Dakota's Administrative Procedures Act, SDCL chapter 1-26. SDCL 1-26-36 delineates the standard for a circuit court's review of an administrative agency's decision, and "[t]he same rules apply on appeal to this Court." *Lagler v. Menard, Inc.*, 2018 S.D. 53, ¶ 22, 915 N.W.2d 707, 715.

> Questions of law are reviewed de novo. *Dakota Trailer Mfg., Inc. v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d 545, 548. Matters of reviewable discretion are reviewed for abuse. SDCL 1-26-36(6). The agency's factual findings are

> reviewed under the clearly erroneous standard. SDCL 1-26-36(5). The agency's decision may be affirmed or remanded but cannot be reversed or modified absent a showing of prejudice. SDCL 1-26-36.

*Id.*

## Analysis & Decision

[¶11.] SDCL 3-12-94 states the eligibility requirements for a surviving spouse to receive survivor benefits from a person enrolled in the SDRS:

> Upon the death of a foundation retiree or any foundation member who has reached normal retirement age, the surviving spouse is eligible to receive a benefit, payable in monthly installments, equal to sixty percent of the retirement benefit that the foundation member was receiving or was eligible to receive at the time of death.

SDCL 3-12-47(80) defines a spouse as "a person who was married to the member at the time of the death of the member and whose marriage was both before the member's retirement and more than twelve months before the death of the member[.]"

[¶12.] The OHE and the circuit court affirmed SDRS's rejection of Anderson's application for survivor benefits because: (1) Anderson and Cady were not married at the time of Cady's retirement; and (2) Anderson did not meet the definition of a "spouse" under SDCL 3-12-47(80). Anderson makes two constitutional claims. First, Anderson claims that the Supreme Court's holding in *Obergefell*—that same-sex couples can no longer be denied the right to marry—should be applied retroactively to a time before Cady's retirement. Second, she claims that the retroactivity of *Obergefell* should be extended to same-sex couples like her and Cady, who Anderson claims, but for South Dakota's unconstitutional prohibition of

same-sex marriage, would have been married prior to Cady's retirement. Anderson claims that accepting these arguments leads to the recognition of her marriage to Cady before the date of their actual marriage and before the date of Cady's retirement, and therefore, to the recognition of Anderson as Cady's spouse for purposes of SDCL 3-12-47(80). Anderson argues that the circuit court erred in rejecting these constitutional arguments and holding that she was not entitled to survivor benefits.

[¶13.] As to the retroactivity of *Obergefell,* Anderson first cites *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517, 125 L. Ed. 2d 74 (1993). In *Harper*, the Supreme Court adopted a rule of retroactivity applying to the Court's decision on federal laws, stating:

> When this Court applies a rule of federal law to the parties
> before it, that rule is the controlling interpretation of federal law
> and must be given full retroactive effect in all cases still open on
> direct review and as to all events, regardless of whether such
> events predate or postdate our announcement of the rule. . . .
> [W]e now prohibit the erection of selective temporal barriers to
> the application of federal law in noncriminal cases. In both civil
> and criminal cases, we can scarcely permit "the substantive law
> to shift and spring" according to "the particular equities of
> individual parties' claims" of actual reliance on an old rule and
> of harm from a retroactive application of the new rule.

*Id.* at 97, 113 S. Ct. at 2517 (citations omitted). Anderson also cites a number of cases and secondary sources that support the retroactivity of *Obergefell*. *See, e.g., Ranolls v. Dewling,* 223 F. Supp. 3d 613, 622 (E.D. Tex. 2016); Steven A. Young, Note, *Retroactive Recognition of Same-Sex Marriage for the Purposes of the Confidential Marital Communications Privilege*, 58 Wm. & Mary L. Rev. 319, 336 (2016) ("Although the Court does not explicitly state that same-sex couples affected

by pre-*Obergefell* law are entitled to retroactive application of post-*Obergefell* law, it is the logical result of the ruling."); Lee-ford Tritt, *Moving Forward by Looking Back: The Retroactive Application of Obergefell*, 2016 Wis. L. Rev. 873, 877 (2016).

[¶14.]     The parties do not seem to contest the retroactive application of *Obergefell*. In its brief, the SDRS suggests that *Obergefell* may be retroactive. However, the SDRS claims that the question of retroactivity is not controlling, here, because, as both the OHE and the circuit court reasoned, the only question in this case is whether Anderson or this Court may "create a marriage post hoc despite the fact that Anderson and Ms. Cady never availed themselves of the marriage laws in another state that recognized same-sex marriage."

[¶15.]     In its decision, the OHE noted that in other jurisdictions where retroactivity has been recognized, the retroactive ruling only affects same-sex marriages that were already solemnized in any manner or if the state recognizes common-law marriages. *See generally*, *Schuett v. FedEx Corp.*, 119 F. Supp. 3d 1155 (N.D. Cal. 2016) (solemnized marriage); *Hard v. Attorney Gen.*, 648 Fed. Appx. 853 (11th Cir. 2016) (solemnized marriage); *Dewling*, 223 F. Supp. 3d 613 (common-law marriage). The OHE reasoned that in order for *Obergefell* to apply retroactively, there must have been a previously *unrecognized marriage* between the couple that would have been recognized but for the law against same-sex marriages.

[¶16.]     The circuit court agreed with the reasoning of the OHE and found it significant that Anderson and Cady chose not to marry in another state prior to *Obergefell*. The circuit court stated:

> Had they [married in another state], and assuming retroactive application of [*Obergefell*], Anderson would presumably prevail here. However, [Anderson and Cady] chose not to take this course of action (for cited reasons that seem plausible and laudable); instead waiting until an option to their liking—going out of State to wed after the Supreme Court said home States must recognize such a marriage—became available. Similarly, if they had sought a marriage license in South Dakota, had it denied based on the existing State laws, successfully challenged that denial in the courts as the Plaintiffs in other States did, then married in South Dakota, Anderson would be entitled to survivor benefits. However, [Anderson and Cady] also chose not to pursue this avenue. This Court agrees with the simple proposition advanced by SDRS and held by the [OHE]: that even retroactive application of *Obergefell* cannot create a marriage where none was ever solemnized according to any State's law at the time of the measuring event (Cady's retirement).

[¶17.] In cases cited by Anderson, those courts only applied *Obergefell* retroactively to a solemnized marriage or to a common-law marriage recognized under state law. Here, assuming without deciding that *Obergefell* applies retroactively, there was no marriage, act of solemnization, or common-law marriage to refer back to. Anderson admits that she was not married to Cady at the time Cady retired—indeed, it is undisputed that the pair did not marry or attempt to marry until July 19, 2015.

[¶18.] But Anderson claims that but for South Dakota's unconstitutional prohibition of same-sex marriage, she and Cady would have been married before the time Cady retired. Anderson emphasizes their long-time affection and commitment to one another and their desire to comply with South Dakota's constitution given their role as police officers. Anderson and Cady's commitment to one another and honorable intentions are not disputed by the parties. But the fact remains that neither Anderson nor Cady made any actual attempt to marry before the date of

Cady's retirement. Anderson's argument therefore, in essence, boils down to an attempt to establish a common-law marriage between her and Cady. South Dakota, however, does not recognize common-law marriage, requiring that a marriage "be solemnized, authenticated, and recorded." SDCL 25-1-29.

[¶19.]     Because Anderson and Cady made no attempt to marry one other, and because South Dakota does not recognize common-law marriage, the issue in this case is resolved as a matter of statutory interpretation. SDCL 3-12-94 provides that only a "spouse" is eligible to receive survivor benefits, and SDCL 3-12-47(80) defines a spouse as "a person who was *married to the member at the time of the death* of the member and *whose marriage was both before the member's retirement and more than twelve months* before the death of the member." (Emphasis added.) Under these statutes, Anderson cannot meet the definition of spouse, and therefore, is not entitled to Cady's survivor benefits under South Dakota law.

[¶20.]     Anderson further argues that the denial of survivor benefits constitutes discrimination against same-sex couples on the basis of marriage. However, we have previously held in *State Div. of Human Rights, ex rel. Ewing v. Prudential Ins. Co. of Am.*, that the denial of employer administered benefits on the basis of marital status does not constitute discrimination. 273 N.W.2d 111, 115 (S.D. 1978). In that case, Ewing, an unmarried woman with no dependents, filed a claim with Prudential for maternity benefits in order to pay for the medical expenses from the birth of her first child. *Id.* at 112. Ewing's Prudential policy, however, only provided maternity benefits to those who listed a spouse as a

dependent and paid an increased premium.  *Id.*  Her claim was therefore denied.  *Id.*

[¶21.]    Ewing filed a complaint with South Dakota's Human Rights Commission arguing that because "marriage is not a prerequisite for pregnancy, [the Prudential] policy discriminate[d] against unwed mothers and married women who for various reasons would not list their husbands as dependents and that such denial of maternity benefits constituted sex discrimination in employment and public accommodations."  *Id.*  The Commission found that Ewing had been illegally discriminated against on the basis of sex, but the circuit court reversed.  *Id.* at 112-13.  We held that Ewing, as a single woman, was not discriminated against on the basis of gender for being denied pregnancy benefits when she had a child.  *Id.* at 115.  This was because the only way for *any* single employee to obtain pregnancy benefits was to be married, declare a spouse as a dependent, and pay an additional premium.∗  Relying on *General Electric v. Gilbert,* 429 U.S. 125, 97 S. Ct. 401, 50 L. Ed. 2d 343 (1976), we noted that "discrimination based upon sex does not result simply because an employer's disability benefits plan is less than all-inclusive. . . ."  Therefore, we held that the policy did not discriminate on the basis of gender but rather differentiated on the basis of marital status.  Effectively, this holding stands for the proposition that an employer or its pension plan may limit administered benefits on the basis of marital status.

---

∗    We noted "although women are the only ones physically capable of pregnancy and childbirth, both men and women are legally capable of incurring responsibility and liability for bills for the medical expense of maternity." *Ewing,* 273 N.W.2d at 115.

[¶22.]     The same logic applies here.  SDCL 3-12-94 only allows for a state employee's survivor benefits to go to a surviving spouse.  To be considered a surviving spouse, Anderson would have had to be Cady's spouse at the time of Cady's retirement.  As stated above, she was not.  This is still true despite Anderson and Cady's honorable views that getting married when same-sex marriage was not recognized in South Dakota would somehow reflect poorly on themselves or the RCPD.  Anderson was denied survivor benefits because her application did not entitle her to such benefits under South Dakota Law.  There was no discrimination on the basis of Anderson's gender or sexual orientation.

[¶23.]     For the reasons stated above, the circuit court did not err in affirming the SDRS's and the OHE's decisions to deny Anderson survivor benefits.

[¶24.]     JENSEN, Justice, and ELSHERE and SHELTON, Circuit Court Judges, and SEVERSON, Retired Justice, concur.

[¶25.]     ELSHERE, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶26.]     SHELTON, Circuit Court Judge, sitting for SALTER, Justice, disqualified.