#29334-a-MES
**2022 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

AMBER KAYE CHRISTENSON,
ALLEN ROBISH, KRISTI MOGEN,
and PATRICK LYNCH,                          Appellants,

v.

CROWNED RIDGE WIND, LLC, and
SOUTH DAKOTA PUBLIC UTILITIES
COMMISSION,                                 Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CARMEN MEANS
Judge

* * * *

R. SHAWN TORNOW
Sioux Falls, South Dakota                   Attorney for appellants.


MILES F. SCHUMACHER of
Lynn Jackson Shultz & Lebrun P.C.
Sioux Falls, South Dakota

BRIAN J. MURPHY of
NextEra Energy Resources, LLC
Juno Beach, Florida                         Attorneys for appellee Crowned
                                            Ridge Wind, LLC.

* * * *

CONSIDERED ON BRIEFS
MARCH 23, 2021
OPINION FILED **08/03/22**

AMANDA M. REISS
KRISTEN N. EDWARDS of
South Dakota Public Utilities Commission

Attorneys for appellee South Dakota Public Utilities Commission.

#29334

SALTER, Justice

[¶1.]        Crowned Ridge Wind, LLC (Crowned Ridge) applied to the South

Dakota Public Utilities Commission (the PUC) for a permit to construct a wind

energy farm in northeast South Dakota.  Several individuals impacted by the

potential wind farm intervened and objected to Crowned Ridge's application.  After

conducting an evidentiary hearing, the PUC issued a written decision approving the

application.  The intervenors appealed to the circuit court, which affirmed the

PUC's decision.  Two of the intervenors now appeal to this Court.  We affirm.

**Facts and Procedural History**

[¶2.]        Crowned Ridge is a wind energy company that sought to construct a

wind farm comprised of up to 130 wind turbines capable of producing 300

megawatts of electricity in Codington and Grant Counties (the Project).  Given its

size, the Project is classified as a "wind energy facility" and was required to obtain a

permit from the PUC before beginning construction.  *See* SDCL 49-41B-2(13)

(defining "[w]ind energy facility" as a facility, which, among other things, is

"capable of generation of one hundred megawatts or more of electricity"); SDCL 49-

41B-4 (stating siting permit requirement).

[¶3.]        Amber Christenson and Allen Robish, among other area residents,

sought and obtained party status as intervenors (the Intervenors) in order to oppose

Crowned Ridge's application.[1]  Their opposition triggered the PUC's contested

---

1.      In addition to the applicant, parties to the PUC application process include
        PUC Staff and "[a]ny person residing in the area where the facility is
        proposed to be sited, or any directly interested person" who applies for and
                                                                (continued . . .)

-1-

hearing procedures, including the requirement that Crowned Ridge file written testimony in support of its application in advance of the hearing. *See* ARSD 20:10:22:39 (stating in part, "Upon the filing of an application pursuant to SDCL 49-41B-11, an applicant shall also file all data, exhibits, and related testimony which the applicant intends to submit in support of its application.").

[¶4.] Crowned Ridge filed, or "pre-filed" as it is commonly known, the testimony of a number of witnesses, including Jay Haley who conducted sound and shadow flicker[2] studies in connection with the Project. Haley's testimony and attached studies were supplemented during the pendency of the administrative case.

[¶5.] Using this pre-filed testimony procedure, Crowned Ridge also filed the written testimony of Kimberly Wells, Ph.D., who provided her findings and expert opinions regarding the Project's impact on the environment, to include its effect on natural resources as well as cultural implications. However, as the dates for the evidentiary hearing drew closer, Crowned Ridge learned that Dr. Wells would be unable to attend and testify in person. As a result, Crowned Ridge indicated it would call Sarah Sappington, who is a colleague of Dr. Wells, to testify about the environmental impact of the Project.

_____

(. . . continued)
    obtains "party status." SDCL 49-41B-17. Christenson is a resident of Codington County; Robish resides in Grant County.

2.    Shadow flicker is the effect of the sun shining through the rotating blades of a wind turbine, casting a moving shadow. *See Ehlebracht v. Crowned Ridge Wind II, LLC*, 2022 S.D. 19, ¶ 3, 972 N.W.2d 477, 481.

[¶6.]     Sappington had previously received a bachelor's degree in anthropology with an emphasis in archaeology and a master's degree in the same disciplines. At the time of the hearing, she had been employed by an environmental consulting firm for sixteen years, working on a variety of energy development projects throughout the Midwest.

[¶7.]     Sappington worked with Dr. Wells on the environmental planning for the Project and had personal knowledge of the findings and opinions expressed in Dr. Wells's initial pre-filed testimony. In fact, Sappington assisted in drafting the testimony. To provide notice of the transition from Dr. Wells to Sappington, Crowned Ridge pre-filed Sappington's testimony adopting Dr. Wells's earlier testimony.

[¶8.]     At the PUC's July 2019 evidentiary hearing, Crowned Ridge called Haley as a witness, but before he began his direct examination, the Intervenors objected to his testimony. They argued that Haley had misrepresented himself as a professional engineer and used the corresponding "P.E." designation after his name on correspondence and documents filed in connection with his sound and shadow flicker studies.

[¶9.]     Haley explained that he holds a bachelor's degree in mechanical engineering and was a licensed professional engineer in North Dakota and Minnesota for nearly 30 years. However, he had in recent years voluntarily allowed his licensure to lapse because of changes to continuing education requirements and his plan to retire in the near future. Although he understood that he was no longer able to stamp engineering drawings, he believed he could still use the professional

engineer designation. He learned that his latter belief was incorrect shortly before the evidentiary hearing.

[¶10.] Nevertheless, Haley explained that it was not necessary to be a professional engineer to conduct sound and shadow flicker studies. He stated that he was a partner in a wind energy consulting firm and had performed many such studies over the years and trained hundreds of others from various disciplines to use a particular software program to plan the construction of wind farms. Haley also testified that he was a member of a committee working to develop international standards for evaluating and locating proposed wind energy farms.

[¶11.] Crowned Ridge responded to the Intervenors' argument by claiming Haley's inaccurate use of the "P.E." designation was an innocent mistake that did not impact his ability to provide expert testimony. Staff for the PUC offered a similar view, indicating that the Intervenors' objection may implicate issues of weight or credibility, but not admissibility.

[¶12.] The PUC's hearing examiner agreed and overruled the Intervenors' objection. Counsel for the Intervenors sought a ruling from the commissioners, all three of whom agreed that the objection should be overruled.

[¶13.] The Intervenors also objected to Sappington's testimony immediately after Crowned Ridge called her as a witness, claiming that Sappington's testimony would constitute inadmissible hearsay. Under the Intervenors' theory, Sappington was simply "adopting" Dr. Wells's out-of-court pre-filed testimony as a sort of proxy witness. However, Crowned Ridge argued that Sappington had personal knowledge of the environmental impact assessment in the same way Dr. Wells did because

Sappington worked with Dr. Wells and others in a collaborative effort to complete the assessment for the Project. Staff for the PUC did not support the Intervenors' objection, and the hearing examiner overruled it. Counsel for the Intervenors again sought a ruling from the members of the PUC who all agreed that the objection should be overruled.

[¶14.] The PUC issued its written final decision and order approving Crowned Ridge's application and granting it a permit to begin construction on the Project. The final decision was subject to 45 conditions, which ranged from restrictions regulating sound emissions from the wind turbines to limits on shadow flicker and other conditions designed to avoid or minimize the Project's impact on natural resources and areas holding historic and cultural significance.

[¶15.] The Intervenors appealed the PUC's final order to the circuit court. As part of their appeal, the Intervenors filed a statement of issues, identifying 31 individual issues, including 36 separate sub-issues. The Intervenors did not expressly challenge the PUC's decision to overrule their objection to Haley's testimony. And though they did include a specific issue relating to Sappington's testimony, the Intervenors alleged a due process violation, not a hearsay claim.

[¶16.] In their brief to the circuit court, the Intervenors addressed only three issues: (1) "Whether the PUC abused its discretion when it approved the Application using incomplete and inaccurate information related to sound studies[;]" (2) "Whether the PUC abused its discretion when it approved the Application without sound and shadow flicker studies at all occupied [residences] within the siting area[;]" and (3) "Whether the PUC abused its discretion when it

approved the Application without a complete avian use study." The Intervenors referenced Haley's use of the "P.E." designation as a means of undermining his expert opinion, but they did not directly challenge the PUC's decision to overrule their objection. The Intervenors also mentioned Sappington in their brief, but only to point out that her testimony supported their view that Crowned Ridge's application did not include an avian study for birds in all affected areas but, in the Intervenors' view, should have.

[¶17.] The circuit court affirmed the PUC's final decision. The court noted the Intervenors' criticism of Haley's testimony but concluded the issue relating to its admissibility was not part of the appeal because it had not been listed among the Intervenors' stated issues. The court also referenced Sappington's testimony. It clarified that, though Sappington acknowledged the absence of an avian study for an area known as Cattle Ridge, the PUC specifically contemplated that fact and had relied upon additional testimony from Sappington, which convinced the PUC that Crowned Ridge had nevertheless used proper methods to assess the Project's "potential effects to wildlife for the entire Project Area."

[¶18.] In the current appeal, the Intervenors now directly challenge the PUC's decision to overrule their objections to Haley's and Sappington's testimony. Though the Intervenors do not explicitly challenge the sufficiency or reliability of the expert testimony, they do claim that inaccurate or incomplete aspects of it represent the prejudicial impact of allowing Haley and Sappington to testify—*i.e.*, the Intervenors were prejudiced when the PUC credited testimony it should have excluded.

[¶19.] We restate the issues presented in this appeal as follows:

1. Whether the PUC abused its discretion when it overruled the Intervenors' objection to Jay Haley's testimony on the basis that he had incorrectly identified himself as a professional engineer.

2. Whether the PUC abused its discretion when it overruled the Intervenors' hearsay objection to the testimony of Sarah Sappington.[3]

**Standard of Review**

[¶20.] "Any party to a permit issuance proceeding aggrieved by the final decision of the Public Utilities Commission on an application for a permit, may obtain judicial review of that decision by filing a notice of appeal in circuit court." SDCL 49-41B-30. We have recognized that "SDCL 1-26-36 delineates the standard for a circuit court's review of an administrative agency's decision, and '[t]he same rules apply on appeal to this Court.'" *Anderson v. S.D. Ret. Sys.*, 2019 S.D. 11, ¶ 10, 924 N.W.2d 146, 148–49 (quoting *Lagler v. Menard, Inc.*, 2018 S.D. 53, ¶ 22, 915 N.W.2d 707, 715). The text of SDCL 1-26-36 provides in part:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

3. The Intervenors also identified a third issue in this appeal, arguing that the circuit court lacked jurisdiction to consider the administrative appeal because its memorandum opinion listed the PUC's docket number as "EL 18-003" instead of using the correct number, "EL 19-003." We granted the joint motion of Crowned Ridge and the PUC Staff for a limited remand, and the circuit court subsequently corrected what appears to have been a clerical error, resolving, without the need for our decision, any question of the circuit court's subject matter jurisdiction.

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[¶21.]     Consistent with this statutory directive, we apply the following standards of review to agency decisions:

> Questions of law are reviewed de novo. *Dakota Trailer Mfg., Inc. v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d 545, 548. Matters of reviewable discretion are reviewed for abuse. SDCL 1-26-36(6). The agency's factual findings are reviewed under the clearly erroneous standard. SDCL 1-26-36(5). The agency's decision may be affirmed or remanded but cannot be reversed or modified absent a showing of prejudice. SDCL 1-26-36.

*Anderson*, 2019 S.D. 11, ¶ 10, 924 N.W.2d at 148–49 (quoting *Lagler*, 2018 S.D. 53, ¶ 22, 915 N.W.2d at 715).

[¶22.]     As is relevant to our discussion here, we generally define an abuse of discretion as a decision that "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, [on full consideration,] is arbitrary or unreasonable[.]" *In re Application of Benton*, 2005 S.D. 2, ¶ 22, 691 N.W.2d 598, 605 (citation omitted); *see also* SDCL 1-26-36(6) (stating that an agency decision may be reversed or modified if the decision is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion").

**Analysis and Decision**

[¶23.]     As an applicant seeking a siting permit from the PUC for construction of its Project, Crowned Ridge had the burden of establishing by a preponderance of the evidence that:

(1)     The proposed facility will comply with all applicable laws and rules;

(2)     The facility will not pose a threat of serious injury to the environment nor to the social and economic condition of inhabitants or expected inhabitants in the siting area.  An applicant for an electric transmission line, a solar energy facility, or a wind energy facility that holds a conditional use permit from the applicable local units of government is determined not to threaten the social and economic condition of inhabitants or expected inhabitants in the siting area;

(3)     The facility will not substantially impair the health, safety or welfare of the inhabitants; and

(4)     The facility will not unduly interfere with the orderly development of the region with due consideration having been given the views of governing bodies of affected local units of government.  An applicant for an electric transmission line, a solar energy facility, or a wind energy facility that holds a conditional use permit from the applicable local units of government is in compliance with this subdivision.

SDCL 49-41B-22.

[¶24.]     Where the application meets with opposition, the PUC will conduct a contested case hearing to determine, in part, whether the requesting party has satisfied its burden under SDCL 49-41B-22.  *See* SDCL 49-41B-17.2.  These hearings are conducted using the procedures set out in South Dakota's Administrative Procedure Act (APA) contained in SDCL chapter 1-26.  *Id.*  Among the provisions contained in the APA is SDCL 1-26-19, which addresses the rules of evidence used in contested administrative cases and provides in part:

Irrelevant, incompetent, immaterial, or unduly repetitious evidence shall be excluded.  The rules of evidence as applied under statutory provisions and in the trial of civil cases in the circuit courts of this state, or as may be provided in statutes relating to the specific agency, shall be followed.  When necessary to ascertain facts not reasonably susceptible of proof

under those rules, evidence not otherwise admissible thereunder may be admitted except where precluded by statute if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

[¶25.] We have interpreted this statute to mean that the rules of evidence generally apply in administrative hearings. *Dail v. South Dakota Real Estate Comm'n*, 257 N.W.2d 709, 712 (S.D. 1977). However, even where the rules would otherwise bar certain evidence, it may nevertheless be admissible under SDCL 1-26-19 if the evidence is "probative of a fact not reasonably susceptible of proof under normal rules" and is "of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.*[4]

[¶26.] Drawing upon this guidance and other rules of appellate procedure noted below, we conclude that neither of the Intervenors' evidentiary claims are sustainable and address each of them in turn.

### *Jay Haley's Testimony*

[¶27.] Before considering the merits of the Intervenors' argument regarding Haley's testimony, we must first determine if it is properly before us. Among the multitude of issues the Intervenors listed in connection with their circuit court appeal, none directly challenged the PUC's decision to allow Haley's testimony, though two of the issue statements contained general references to the PUC's consideration of "false and misleading evidence and testimony in entering its final

---

4.    We have recognized that SDCL 1-26-19 contains a third condition to the admission of relevant information notwithstanding the rules of evidence. For otherwise inadmissible written evidence, the proponent must also demonstrate that the "interests of the parties are not substantially prejudiced" by its admission. *DuBray v. Dep't of Soc. Servs.*, 2004 S.D. 130, ¶ 12, 690 N.W.2d 657, 662.

Order and Decision . . . ."[5] Citing SDCL 1-26-31.4, the circuit court determined that the Intervenors' failure to identify the issue relating to Haley's testimony among their many issue statements precluded review.

[¶28.] The provisions of SDCL 1-26-31.4[6] require the party appealing an administrative order to file a statement of issues within ten days after filing the notice of appeal. This statement of issues does not, itself, have jurisdictional significance. *See Lagler*, 2018 S.D. 53, ¶¶ 40–43, 915 N.W.2d at 718–20. The notice of appeal is the source of the circuit court's appellate jurisdiction—not the statement of issues. *Id.* ¶ 41, 915 N.W.2d at 719. However, an Intervenor's omission of an issue in the statement of issues means the party has failed to preserve it. *Id.* ¶ 42, 915 N.W.2d at 719. An unpreserved issue is thereafter deemed waived and will generally not be reviewed. *Id.*

---

5. Issue statement 3 stated: "Whether the PUC denied Intervenors [sic] and Appellants [sic] constitutional rights to due process rights by considering incomplete and misleading information in arriving at its Final Decision and Order Granting Permit to Construct Facility."

 Issue statement 22 similarly provided: "Whether the PUC violated Intervenors [sic] due process rights and acted arbitrarily and capriciously by considering false and misleading evidence and testimony in entering the Final Order and Decision Granting Permit to Construct Facility."

 Issue statement 7 appeared to challenge the weight the PUC accorded to sound and shadow flicker evidence, but not the decision to admit Haley's testimony: "Whether the PUC acted arbitrarily and capriciously when it relied on unreliable applicant witness testimony regarding the substance of the application and the construction of the proposed facility related to shadow flicker and infrasound on property owned by Intervenors and others within Codington and Grant counties."

6. It appears SDCL 1-26-31.4 originated as a Supreme Court Rule, but the Legislature made stylistic changes to the rule during its 2019 session. *See* 2019 S.D. Sess. Laws ch. 4, § 1.

[¶29.] We agree with the circuit court that the Intervenors did not preserve their argument that Haley should not have been permitted to testify because he had referred to himself as a professional engineer. None of the issues included in the Intervenors' statement of issues raised a specific challenge to the admissibility of Haley's testimony. Perhaps most revealing is the fact that the Intervenors also did not include a challenge to the admission of Haley's testimony in their brief to the circuit court. Though the Intervenors' circuit court brief did mention that Haley erroneously referred to himself as a professional engineer, it did so only in the context of suggesting he lacked credibility and that Crowned Ridge had overstated his competence.

[¶30.] Further, the Intervenors' issue statements alleging the PUC violated their due process rights by considering "false and misleading evidence and testimony" are unavailing for the additional reason that the Intervenors never made a due process argument when they objected to Haley's testimony at the evidentiary hearing. Rather, they suggested his testimony and opinions should be excluded purely because Haley claimed he was a professional engineer at a time when he had let his license lapse. But this sanction-style argument was not couched in terms of due process.

[¶31.] However, even if the issue had been preserved in a specific issue statement, we believe the PUC acted within its discretion to allow Haley's testimony. The facts and circumstances associated with Haley's mistaken belief that he could continue to refer to himself as a professional engineer, though not able to stamp drawings, were laid bare in detail before the PUC, whose members were

unpersuaded by the Intervenors' objection. The PUC's ultimate decision to allow the testimony finds support in the rules of evidence.

[¶32.] Rule 702 of the South Dakota Rules of Evidence allows witnesses to provide expert opinions if they are qualified "by knowledge, skill, experience, training, or education[.]" SDCL 19-19-702. Haley holds an undergraduate degree in mechanical engineering, is a member of a committee formulating international standards for designing wind farms, has substantial experience conducting sound and shadow flicker studies, and has taught over 200 people how to use a software program to design wind farms. The Intervenors do not seriously challenge Haley as an expert.[7] Nor have they challenged the admissibility of his opinions under the standard set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *See State v. Yuel*, 2013 S.D. 84, ¶ 7, 840 N.W.2d 680, 683 (quoting *State v. Loftus*, 1997 S.D. 131, ¶ 21, 573 N.W.2d 167, 173) ("The *Daubert* standard requires the trial court to ensure that an expert's testimony both 'rests on a reliable foundation and is relevant to the task at hand.'").

[¶33.] Indeed, the Intervenors' theory for excluding Haley's testimony did not implicate the soundness of his methodology or its relevance to Crowned Ridge's application. Instead, it was described before the PUC by the Intervenors' counsel in

---

7. The Intervenors do offer a more technical argument, claiming that Haley could not represent that he was a professional engineer without running afoul of SDCL chapter 36-18A, which regulates, among other technical professions, the practice of engineering. However, we fail to see how this claim impacts the admissibility of Haley's testimony in this PUC proceeding for the reasons we have expressed.

terms of a proposed sanction for Haley's use of the "P.E." designation after he had

purposefully allowed his licensure to lapse:

> The witness cannot make such a significant representation to this Commission and expect us just to give it a pass. I'm going to move that all of the proposed testimony of this witness and the exhibits of this witness and the supplemental reports and principal reports of this witness . . . be stricken. And I'm going to move that the admission of his testimony be denied because he's misrepresented his status to this Commission, the public, and to my clients as the Intervenors.

[¶34.] Although counsel for the Intervenors further claimed that Haley's act

of "perpetrating a falsehood" had "an effect on the competency of the evidence that

he would present[,]" counsel did not explain how. In fact, during his brief cross-

examination, counsel for the Intervenors did not challenge Haley's methods or

conclusions.

[¶35.] The PUC staff stated its view that Haley's use of the "P.E." designation

did not disqualify him as an expert who possesses sufficient "training, education

and experience" and suggested that the PUC members could consider and weigh the

credentialing issue in connection with the entirety of Haley's testimony. The

hearing examiner agreed and overruled the Intervenors' objection. Counsel for the

Intervenors sought a ruling from the three commissioners, each of whom voted to

overrule the objection to Haley's testimony.

[¶36.] The Intervenors' additional claim that the PUC gave Haley "a pass" by

allowing him to testify is not supportable. Merely allowing Haley to testify did not

mean that the PUC would accept his explanation as to why he had, until recently,

continued to use the "P.E." designation. Nor did the admission of the testimony

compel the PUC to reflexively accept all of Haley's opinions. The record indicates

that Haley was questioned at some length by the PUC chair, and by the Intervenors' counsel, before the PUC decided to overrule the Intervenors' objection. In addition, the commissioners each examined Haley and asked substantive questions to test the strength of his opinions and their bearing upon Crowned Ridge's application. Under the circumstances, we see no abuse of discretion.

***Sarah Sappington's Testimony***

[¶37.] As an initial matter, the Intervenors' objections to Sappington's testimony presents its own waiver question that potentially precludes our review of the issue. Though the Intervenors referenced Sappington's testimony in their statement of issues to the circuit court, they did not submit an argument challenging the admission of the testimony.

[¶38.] Although we review administrative appeals as the circuit court did, our decisions maintain a principal tenet of appellate procedure that generally prohibits parties from raising issues that were not first presented to the circuit court. *See Sioux Falls Shopping News, Inc. v. Dep't of Revenue and Regul.*, 2008 S.D. 34, ¶ 29, 749 N.W.2d 522, 528 (declining to consider an issue not raised in the circuit court following an administrative appeal); *Romey v. Landers*, 392 N.W.2d 415, 420 (S.D. 1986) (holding a party's failure to raise an issue in an administrative appeal to the circuit court precluded review by the Supreme Court).[8] Applying these holdings

---

8.    Although the context unmistakably involves administrative appeals in each case, these decisions do not mark a distinction between the role of a circuit court as a reviewing court and its more traditional role as a trial court exercising original jurisdiction. In *Sioux Falls Shopping News*, for example, we cite two criminal cases and state that the "rule exists to permit a trial court an opportunity to correct claimed error, prior to appeal." 2008 S.D. 34,

(continued . . .)

here, we believe that the Intervenors cannot argue for the first time on appeal to this Court that the PUC abused its discretion by admitting Sappington's testimony.

[¶39.]    However, even if we were to consider the merits of the Intervenors' argument, we fail to see how Sappington's testimony constitutes hearsay. Our common definition of hearsay is "an out-of-court statement used 'to prove the truth of the matter asserted in the statement[.]'" *State v. Wills*, 2018 S.D. 21, ¶ 12, 908 N.W.2d 757, 762 (quoting SDCL 19-19-801(c)). Here, Sappington did not repeat Dr. Wells's out-of-court statements—she appeared as a witness and offered her own independent testimony and was subject to cross-examination. The fact that it was similar or the same as Dr. Wells's pre-filed testimony may well reflect the collaborative way their group worked, as Sappington stated, but it does not make the testimony inadmissible hearsay.

[¶40.]    The hearing examiner reached a similar conclusion when she overruled the hearsay objection, and the commissioners did as well with Commissioner Nelson explaining:

> It is not impossible for two people to have the same opinions. And what I am understanding is that she has come here and she is saying, I have the same opinion as Ms. Wells and I am willing to defend that. And if that is what she is coming here for, and she's going to swear under oath that that's what she's doing, I find that to be acceptable.

---

(. . . continued)
¶ 29, 749 N.W.2d at 528. But we need not resolve whether a circuit court's distinct trial court and reviewing court roles impact the rule requiring a party to preserve arguments or risk waiver, given our alternative merits determination that the admission of Sappington's testimony did not transgress the rules of evidence in any event.

[¶41.] During her testimony, Sappington explained her direct involvement with Dr. Wells and others in conducting the environmental studies relating to the Project. Sappington stated she is a masters-level anthropologist with an emphasis in archaeology. She has worked for a nationwide environmental consulting firm for almost two decades. She routinely conducts environmental permitting, regulatory compliance, archeological investigations, and directs cultural and natural resource management. Sappington explained that she had assisted in preparing Dr. Wells's pre-filed testimony and described the efforts of her team to ensure compliance with state and federal requirements regulating cultural and natural resources.[9] Her group conducted field studies and desktop studies to determine the environmental and cultural impact of the proposed Crowned Ridge Project in an effort to avoid or minimize any adverse effects.

[¶42.] At the heart of the Intervenors' argument is their view that Dr. Wells was *more* qualified to render the cultural and environmental impact opinions. Dr. Wells, they explain, holds a Ph.D. in Fisheries and Wildlife Sciences and is a Certified Wildlife Biologist and Certified Wetland Delineator, and much of the assessment of the impact associated with the Project deals with its effect on plants and animals. However, the Intervenors did not challenge Sappington's competency

---

9. As explained by the parties, pre-filed testimony aids them in their preparation by sharing their evidence prior to the evidentiary hearing, enhancing their effort to prepare and conduct discovery. Simply pre-filing testimony does not mean the evidence has been admitted. *Compare* ARSD 20:10:01:22.06 (providing that "[w]hen ordered by the commission[,]" testimony shall be filed in written form) *with* ARSD 20:10:01:24.02 ("Evidence shall be received in the order determined by the commission or presiding officer at the hearing.").

to testify regarding her own opinions under the *Daubert* standard, just that her testimony constituted hearsay, which, as we have determined, it did not.

[¶43.]     The PUC's practice of allowing one witness to "adopt" the pre-filed testimony of another is not as worrisome as the Intervenors suggest, at least not here. Though Sappington may have adopted Dr. Wells's testimony, she did so because it aligned with her own first-hand knowledge and expert opinions, not as a designed end-run around the hearsay rules. The PUC's decision to overrule the Intervenors' hearsay objection was, therefore, not an abuse of discretion.[10]

## Conclusion

[¶44.]     For different reasons, the Intervenors have failed to preserve either of the evidentiary issues they present on appeal. However, even if that were not the case, the PUC acted within its discretion when it denied the Intervenors' challenges to Haley's and Sappington's testimony. We affirm.

[¶45.]     KERN, DEVANEY, and MYREN, Justices, and KRULL, Circuit Court Judge, concur.

[¶46.]     KRULL, Circuit Court Judge, sitting for JENSEN, Chief Justice, who deemed himself disqualified and did not participate.

---

10.    The Intervenors have paired their hearsay argument with an allegation that the admission of Sappington's testimony also violated their due process rights. Crowned Ridge argues that the Intervenors did not preserve a due process claim before the PUC, and the contours of the claim are not separately developed in the Intervenors' briefs to this Court. Given our ultimate disposition of the hearsay issue here, it is unnecessary to consider the due process claim further. *See Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir. 1985) ("[A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process.").